**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 16-cv-00890-MSK

**MELANIE ANNE BOWE,**

　　Plaintiff,

v.

**NANCY BERRYHILL, Acting Commissioner of Social Security,**

　　Defendant.[1]

---

### OPINION AND ORDER VACATING DECISION AND REMANDING CLAIM
---

**THIS MATTER** comes before the Court pursuant to the Plaintiff's appeal from the decision of the Defendant Commissioner of Social Security, denying her application for benefits. In considering the matter, the Court has reviewed the Administrative Record **(# 14)**, and the parties' briefing **(# 19, 21, 24)**.

### JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g).

### FACTS

The Court briefly summarizes the pertinent facts and procedure here, and elaborates as necessary in its analysis.

At the time of her application for disability benefits in 2012, Ms. Bowe was 40 years old. She had two years of college education and lived with her 12-year old son and her mother. She

---

[1]　The Court has *sua sponte* modified the caption to reflect the identity of the new Acting Commissioner.

had previously worked as a bridal consultant, and also had experience as an executive assistant, a Human Resources manager, and a manager of an auto parts store, among other things. She claimed a disability onset date of 2011,[2] complaining primarily of fibromyalgia, rheumatoid arthritis, migraine headaches, and emotional disorders including depression and anxiety.

Ms. Bowe testified at the hearing that, due to these various maladies, she could concentrate on a given task for 30 minutes to an hour, that she could lift 5-10 lbs., could walk "about a block," could stand for 20-40 minutes and sit for the same period before needing to change positions. She testified that she experienced disabling migraines approximately 3 times per month, each lasting for a full day. She has irregular anxiety attacks that she attributes to stress and which require her to spend time alone to recover from. She did not cook, beyond preparing frozen foods for herself. She went grocery shopping six times per month, but did so in the morning or evening to avoid crowds. She reported that this was effectively the only time she left the house, and that she spent 97% of her time in her room. She socialized only with her mother, her 12-year old son, and a friend, all of whom live in the same house with her.

However, in a March 2013 Functional Report, Ms. Bowe reported that she "tr[ies] to get outside everyday at least for some air and sun," that she will drive up to 10 miles, that she goes grocery shopping "a couple of times a week," stated that she handles stress "very well – I become completely calm, deal with it, and move on" (although she also stated that she "internalizes it" which is "why I'm sick"), and that she can handle changes in routine because "I can always handle anything, I have been through just about everything you can imagine."

Treating providers offered several opinions:

---

[2] Ms. Bowe began suffering symptoms as early as 2009, but her claim for disability benefits at that time was denied.

- Dr. Lutt, a rheumatologist, opined that Ms. Bowe should avoid stressful situations, repetitive motion activities, and jobs that require her to remain in one position for more than an hour. Dr. Lutt also stated that Ms. Bowe would require an understanding and flexible employer that could accommodate some absenteeism due to fibromyalgia flare-ups, doctor appointments, and unscheduled breaks to change positions.

- Dr. Zacharias, a neurologist, opined that Ms. Bowe averages three disabling headaches per week, each lasting an entire day. She also opined that any employer would have to accommodate absenteeism on that frequency due to such headaches. Dr. Zacharias further opined that Ms. Bowe would need unscheduled breaks, would have to avoid stressful situations, avoid environmental extremes of heat and cold, avoid bright or flashing lights or sustained computer work.

- Dr. Dowdy, Ms. Bowe's family practitioner, opined that she was unable to do any physical work and must spend the majority of her time resting in bed. Dr. Dowdy stated that Ms. Bowe has migraine headaches for at least 10 days per month which last up to 3 days, and that she is unable to drive due to seizures. Dr. Dowdy opined that any employer would have to be flexible to accommodate absenteeism and unscheduled breaks, that Ms. Bowe would have to avoid computer work, bright or florescent lights, odors, fumes, or heat. Dr. Dowdy also opined that Ms. Bowe should avoid walking, should not stand or sit for more than 30 minutes, and should not interact with people.

- Ms. DuMond, a social worker,[3] opined that Ms. Bowe would require an employer flexible on absenteeism, hours, and unscheduled breaks, and that Ms. Bowe should avoid full-

---

[3] The Commissioner argues that social workers cannot be considered treating sources, pursuant to 20 C.F.R. § 404.1513(d) and 20 C.F.R. § 404.1527(c)(2). This Court need not resolve that issue for purposes of this decision.

time and fast-paced work, work that involves continual exposure to the public, or work that is socially over-stimulating. However, some treatment records show greater functional capability. For example, In June 2014, after undergoing several therapy sessions, Ms. Bowe reported that "She [is] going out into the world more and more, relating to her goal of not be[ing] as afraid and being less anxious about driving; she now has her driver's license, she is participating in activities outside the home with her son and walking." At a treatment session in May 2014, she reported that she had accomplished a therapy objective of taking an online class. Ms. DuMond noted that Ms. Bowe's "strength is home schooling her son and helping him with his emotional life."

The record also reflects the following opinions of consulting experts:

• Dr. Moran, a consultative physician, opined that Ms. Bowe could alternate standing, sitting, and walking as needed for a total of 8 hours per day, could lift and carry 20 lbs., and could do repetitive motions.

• Dr. Lipson, an examining psychologist, opined that Ms. Bowe had, in general, a mild impairment in her ability to maintain productive employment. He rated her as markedly impaired in the activities of remembering complex instructions and maintaining persistence on complex tasks; as moderately impaired in interacting with the public and supervisors, in responding to criticism and adapting to changes in routine, in maintaining pace on complex tasks, in remembering simple instructions, and in maintaining persistence on simple tasks; and as mildly impaired in maintaining pace on simple tasks, on maintaining concentration on complex tasks, and on interacting with supervisors. He opined that she had no impairments in comprehending simple instructions, attending to simple repetitive tasks, and sustaining concentration on simple tasks. He also noted that Ms. Bowe would have moderate impairments

in her ability to keep to a schedule, maintain attendance, be punctual, adapt to the work environment, and complete a normal work day without special or additional supervision.

- Dr. Glasco, a psychiatrist, opined that Ms. Bowe can perform work not involving significant complexity or judgment, but should not work with the general public.

- Dr. Kutz, an examining psychologist, opined that Ms. Bowe's attention, concentration, persistence and pace, and social adaptation are all mild to moderately impaired.

- Dr. Kreiger, opined that Ms. Bowe could perform light exertion work, and should avoid exposure to machinery and heights.

Ms. Bowe's claim was considered at a hearing before an Administrative Law Judge ("ALJ") in 2014. At that hearing, Ms. Bowe and her housemate both testified. The ALJ also took evidence from a vocational expert ("VE"). The VE testified that Ms. Bowe's past work experience generally had an SVP level of 6-8 and a light-to-sedentary exertional level. The ALJ inquired whether a person with Ms. Bowe's education, with the ability to lift 20 lbs. occasionally and 10 lbs. frequently, to stand and walk or sit for 6 hours, able to balance, and unable to perform work that required intense concentration, could perform any of her past work. The VE responded that nearly all of Ms. Bowe's past work would be performable with such limitations. The ALJ then inquired whether the same scenario, plus the additional limitation that she is only able to understand and carry out simple instructions and perform simple tasks, would change that result. The VE responded that, with the additional limitation, Ms. Bowe would not be able to perform any of her past relevant work, but could perform the jobs of office helper or photocopy machine operator. In response to questions from Ms. Bowe's counsel, the VE testified that both jobs would be unavailable in each of the following additional circumstances: (i) if the person performing it was limited to standing or sitting for only 20 minutes at a time; (ii) if the person

had seizures or migraine headaches that were exacerbated by bright or flashing lights; (iii) if the person suffered from short-term memory deficits requiring regular reminders every 5-10 minutes; (iv) if the person suffered from an anxiety disorder from working around others that would require her to take 15-30 minute breaks two to three times per week; (v) if the person's fibromyalgia or arthritis required that they leave work unexpectedly two times per month to go home and rest; and (vi) if the person would need to leave work for an entire day twice a month because of migraines.

The ALJ issued a Decision in October 2014. Employing the standard five step analysis, the ALJ found at Step 2, that Ms. Bowe had severe impairments in the form of a thyroid disorder, asthma, fibromyalgia, migraine headaches, a mood disorder not otherwise specified, an affective disorder, and PTSD.[4]

At Step 3, the ALJ found that she has mild restrictions in the activities of daily living, mild-to-moderate difficulties in social functioning, and mild-to-moderate difficulties with regard to concentration, persistence, and pace, as reflected in the consultative opinion of Dr. Kutz. This combination of impairments did not rise to the level sufficient to meet a Listing.

At Step 4, the ALJ determined that Ms. Bowe has the residual functional capacity to lift 20 lbs. occasionally/10 lbs. frequently, to stand and/or walk and to six for up to six hours per day, and to walk on uneven terrain. She could not climb ladders or be exposed to extreme cold, moving machinery, or unprotected heights. She could not perform assembly line work or any work requiring intense and sustained concentration (such as that demanded of a lifeguard or air traffic controller). In determining this RFC, the ALJ rejected <u>all</u> of the opinions of the treating

---

[4] The ALJ noted that it was possible to construe the evidence in the record as supporting a conclusion that the migraine headaches were either not medically-determinable or not severe, but the ALJ stated that he would give Ms. Bowe "every benefit of the doubt."

providers as controlling, and accorded them less weight (collectively) as compared to the weight he gave the consulting physicians (collectively).  The ALJ singled out Dr. Kutz and Dr. Lipson's opinions as enjoying particular weight, due to their having examined Ms. Bowe; the ALJ singled out Dr. Dowdy's opinion as receiving less weight, noting that Dr. Dowdy relied entirely on Ms. Bowe's self-reported symptoms, rather than conducting any objective testing of her limitations.

Based on the testimony of the VE and the ALJ's findings , the ALJ further found that Ms. Bowe could perform all of the jobs within her past relevant work, with the exception of department manager.

Finally, reaching Step 5 as an alternative to his findings at Step 4,  based on the testimony of the VE, the ALJ found that Ms. Bowe has the residual functional capacity to perform jobs in the national and regional economy that require only the ability to understand and carry out simple instructions and perform simple tasks, particularly the jobs of office helper, and photocopy machine operator.  The ALJ rejected Ms. Bowe's testimony as to greater limitations for the reasons set forth above.  Accordingly, the ALJ denied Ms. Bowe's claim.

Ms. Bowe requested that the Appeals Council review the ALJ's determination, but the Appeals Council declined.  The ALJ's decision thus became the decision of the Commissioner. Ms. Bowe then timely filed the instant appeal.

## **ANALYSIS**

Ms. Bowe raises three[5] primary challenges on appeal: (i) that the ALJ improperly erred in rejecting opinions by Ms. Bowe's treating physicians; (ii) the ALJ improperly omitted sever impairmentsat Step 2, and that error continued through the remaining steps; and (iii) the ALJ

---

[5] Ms. Bowe's statement of issues lists a fourth argument – that the ALJ erred in failing to consider all functional limitations of her impairments, including pain and fatigue – but no substantive argument on that point is contained in her brief.

failed to consider the testimony given by the vocational expert during cross-examination, which suggested that Ms. Bowe's actual limitations would prevent her from any gainful activity.

### A. Standard of review

Although the Court's review is de novo, the Court must uphold the Commissioner's decision if it is free from legal error and the Commissioner's factual findings are supported by substantial evidence. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is evidence a reasonable person would accept to support a conclusion, requiring "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may not reweigh the evidence, but it looks to the entire record to determine if substantial evidence exists to support the Commissioner's decision. *Wall*, 561 F.3d at 1052. If the ALJ failed to apply the correct legal standard, the decision must be reversed, regardless of whether there was substantial evidence to support factual findings. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B. Treating physician opinions

Ordinarily, a treating physician's opinion must be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007), 20 C.F.R. § 404.1527(c)(2). As explained in *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003):

> The analysis is sequential. An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.

If both prongs of this test are met, the treating physician's opinion is given controlling weight over all contrary opinions. To give a treating provider's opinion less than controlling weight, the ALJ must give specific and legitimate reasons. *Drapeau v. Massanri*, 255 F.3d 1211 (10th Cir 2001); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

If a treating physician's opinion is not afforded controlling weight, the ALJ must then proceed to weigh the opinions of <u>all</u> medical providers, both treating and consultative. The comparative assessment requires consideration of several factors: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors, such as the physician's familiarity with Social Security standards and the extent to which the physician examined other medical records in reaching his or her conclusions. *Allman v. Colvin*, 813 F.3d 1326, 1331–32 (10th Cir. 2016), 20 C.F.R. § 404.1527(c)(1)-(6). A consulting examiner's opinion is presumptively entitled to more weight than an opinion derived from a review of the records. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). The ALJ may dismiss or discount an examining physician's opinion but must do so based on the foregoing factors and must provide specific, legitimate reasons for doing so. *Id*. Those reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

Although Ms. Bowe's arguments in this regard are vague and generalized,[6] she identifies the treating physician rule (citing to to 20 C.F.R. §404.1527(c)(2) and the explanation in *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)) and states that it was not correctly applied. Thus, the Court begins with the question that she poses - "Did he ALJ err in failing to follow the treating physician rule?"

The ALJ's opinion addresses the medical providers' opinions in a somewhat elliptical and disjointed way. The ALJ begins by extensively summarizing the treatment records of Ms. Bowe's various providers. The ALJ first covers treatment Ms. Bowe received for physical maladies. *Docket # 14-2 at 21-23*. The ALJ then offers a paragraph of what appears to be his own findings as to Ms. Bowe's residual functional capacity due to those physical ailments: "Considering the combined effect of the claimant's multiple impairments, she is limited to light exertion work." *Id.* at 23. It is by no means clear how the ALJ derived this opinion at this point in the analysis, particularly insofar as he had yet to address any providers' functional capacity opinions at this point.

The ALJ then proceeds to summarize Ms. Bowe's treatment records relating to mental health treatment, and concludes with another paragraph that again seems to be a functional capacity finding regarding her mental impairments: "Considering the claimant's psychological impairments she should not perform any work requiring intense, sustained concentration . . . The evidence as a whole does not support a finding that the claimant is unable to work due to her

---

[6] Ms. Bowe appears to conflate the analysis the ALJ performs to decide whether to give controlling weight to treating source opinions under 20 C.F.R. § 404.1527(c)(2) with the entirely separate relative weight analysis the ALJ performs for all medical source opinions under 20 C.F.R. § 404.1527(c)(1)-(6).

psychological impairments." *Id.* at 23-24. Once again, it is unclear how the ALJ reached this finding.

Only then does the ALJ address medical opinions with regard to Ms. Bowe's <u>functional capacity</u>. In this regard, it is helpful to quote the entirety of the ALJ's analysis on the question of whether Ms. Bowe's treating providers' opinions about her functional capacity should be given controlling weight:

> I have discussed the medical treatment records in the paragraphs immediately above. I will now discuss the medical opinions about functional capacity and will address the weight to give to such opinions. First, I will consider whether should give <u>controlling</u> weight to the opinions of any medical source. Then, I will consider the <u>relative</u> weight I should give to the opinions of each medical source.
>
> In this case, various health care professionals have expressed opinions about the claimant's functional capacity. The regulations describe these health care providers generally as "medical sources" and classify the medical sources by type. When determining whether to assign <u>controlling</u> weight, I consider only the opinions of those medical sources who have actually treated the claimant. The Regulations classify such medical sources, unsurprisingly, as the claimant's "treating sources." In this case, treating sources have given opinions about the claimant's functional capacity, so I considered whether I should give controlling weight to the opinions of any of the claimant's treating sources.
>
> In addressing the issue of controlling weight, I must consider whether the regulatory requirements have been satisfied. In order for the opinions of a treating source to receive controlling weight, they must be "consistent" with "the other substantial evidence" in the record. Such other evidence may include the opinions of other treating sources as well as the opinions of non-treating medical sources. Non treating sources include State and Regional Agency medical and psychological consultants, Consultative Examiners (CE), and Medical Experts (ME).
>
> In this case, other medical sources have indeed provided opinions about the claimant's functional capacity. The record indicates opinions from a State Agency medical consultant and psychological consultant. Those opinions concluded that the

> claimant's limitations would not preclude the performance of
> substantial gainful activity. In addition, the record includes
> opinions from at least one Consultative Examiner (CE) about the
> claimant's functional capacity. Those opinions concluded that the
> claimant's limitations would not preclude the performance of
> substantial gainful activity.
>
> The opinions that I have just summarized constitute the
> "substantial evidence" mentioned in the regulations. The treating
> source opinions are not "consistent" with "the other substantial
> evidence" in the record. Consequently, I find that no treating
> source opinion is entitled to receive controlling weight.
>
> Having addressed the issue of <u>controlling</u> weight, I now address
> the issue or the <u>relative</u> weight . . . .

*Docket #* 14-2 at 24-25.

This is the total discussion with regard to whether the opinions of the treating physicians should be given controlling weight. It is flawed for several reasons. First, it is not clear that the ALJ performed the full analysis required by *Watkins*: the Court can locate nothing in the ALJ's opinion that addresses the first step of the inquiry: whether each of Ms. Bowe's treating providers' opinions were or were not supported by medically-acceptable clinical or diagnostic procedures.[7] Such a finding by the ALJ as to each treating source's opinion is required to complete the first step of the controlling weight analysis under *Watkins*.

Second, to the extent the ALJ refused to give controlling weight to the treating source opinion because he found them to be inconsistent with substantial evidence in the record, the finding is too cursory. It fails to identify the contents of the opinions by treating providers at all,

---

[7] This error has some significance. In suggesting that Dr. Dowdy's opinions were entitled to lesser weight, the ALJ relied upon the fact that Dr. Dowdy simply accepted Ms. Bowe's self-reported limitations, rather than conducting her own "validity testing." This seems to suggest that the ALJ believed that there were some medically-acceptable "validity tests" that Dr. Dowdy could have and should have performed, such that her opinion could be denied controlling weight under the first prong of the *Watkins* analysis. But the ALJ does not identify what those tests were or on what basis he concludes that it was medically-<u>un</u>acceptable for her to fail to do so.

and fails to identify how the contents of such opinions are inconsistent with other evidence in the record.[8]

Third, each opinion must be weighed individually, and reasons for it not receiving controlling weight must be specifically articulated. 20 C.F.R. § 404.1527(c)(2). As *Watkins* makes clear, the ALJ must explain his reasoning with "sufficient[ ] specific[ity] to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 373 F.3d at 1119. Even assuming that the ALJ's "relative weight" analysis has some applicability to his evaluation of the treating providers' opinions at the "controlling weight" stage, the Court is not sanguine that the ALJ has adequately explained the reasons he gave for crediting the consultative providers' opinions. The ALJ often addresses the consultative providers' opinions categorically (rather than individually), and often offers only conclusory reasons for crediting them: *e.g.* "the above medical source opinions are more consistent with the longitundial record"; "these medical sources presented more relevant supporting medical evidence, and provided more satisfactory supporting explanations, for the opinions given." The ALJ does not explain <u>why</u> he believes that one opinion is "more consistent with the longitudinal record" than another, or <u>which</u> consultative providers offered "more relevant supporting evidence" than the treating providers. As a result, the Court is left with only

---

[8] By all appearances, the ALJ folded the "controlling weight" analysis into the "relative weight" analysis, assuming that his conclusions regarding the latter implicitly constitute findings as to the former. As part of his relative weight analysis, the ALJ did find that Dr. Dowdy expressed opinions on Ms. Bowe's functional capacity that were inconsistent with the record because Dr. Dowdy opined that Ms. Bowe spent some 97% of her time in her room, whereas records from Ms. Bowe's treatment with Ms. DuMond in June 2014 reflected Ms. Bowe "participating in activities outside the home with her son and walking." Whether this finding, if made at the appropriate point in the ALJ's treating physician analysis, would be sufficient to deny controlling weight to Dr. Dowdy's opinions is a matter this Court does not consider at this time, as the ALJ's failure to correctly perform the controlling weight analysis separately is legal error warranting reversal in any event.

conclusions, not reasoning, to evaluate. Although it is permissible for an ALJ to find that conflicting opinions by consultative examiners are "substantial evidence" in the record sufficient to render a treating provider's opinion "inconsistent," the ALJ must make specific findings explaining why he concluded that the consultative examiner's opinion is more consistent with the actual facts in the record, or why the treating provider's opinion is not. *See e.g. Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (ALJ could reject controlling weight to treating provider's opinion based on consultative examiner's contrary opinion, because consultative examiner "conducted tests to support his conclusions," whereas treating provider "fail[ed] to provide any objective medical evidence to support his findings"). The ALJ here failed to do so.

Accordingly, the Court finds that the erred in failing to demonstrate application of the correct legal standard regarding the treating providers' opinions. Because the Decision must be reversed and remanded due to legal error, it is not necessary to address the remainder of Ms. Bowe's contentions.[9]

---

[9] Were the Court to reach Ms. Bowe's other arguments, the Court would have some concern that, when affording relative weight to the various providers' opinions, the ALJ misapplied the provisions of 20 C.F.R. § 404.1527(c)(6) in finding that the consultative sources' opinions were entitled to more weight because those sources are experts in Social Security principles, or because they reviewed documents from multiple providers. Although the cited regulation allows consideration of those factors, it appears to this Court that these factors are appropriate to consider only when their application is tied to particular evidence in the record making them pertinent. For example, it may be appropriate for the ALJ to consider the extent of a source's familiarity with Social Security principles if that source uses terminology that has a unique meaning in the Social Security realm, but it may not be appropriate to credit an opinion that a claimant can lift 20 lbs. over an opinion that the claimant can only lift 5 lbs. simply because the person expressing the former opinion has greater expertise in Social Security principles than the person expressing the latter opinion. In other words, expertise in Social Security is neither necessary nor helpful in determining how much weight a person can lift, and it would be error to credit one opinion of this type over another simply on the basis of relative experience with Social Security. Similarly, it may be appropriate to consider the extent to which one provider reviewed another's records if the review of one provider's documents by an opining provider would have revealed certain specific facts that might have caused the opining provider to change their opinion, but it would not be appropriate to rely on this factor simply because, say,

**CONCLUSION**

For the reasons set forth above and based on the full administrative record **(# 14)**, the Court **VACATES** the Commissioner's opinion as being affected by legal error and **REMANDS** the matter to the Commissioner for further proceedings in accordance with this Opinion.

Dated this 15th day of December, 2017.

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
Chief United States District Judge

---

a psychiatrist treating mental health issues failed to review the records of a physician treating physical infirmities.  Here, the ALJ has not identified any particular circumstances in this case that warrant consideration of these factors, calling into doubt whether they are properly relied upon here.  Nevertheless, the Court need not make specific findings on these arguments.